UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMADO ARMANDO VALDES-OVIEDO,<br><br>               Petitioner(s),<br><br>    v.<br><br>IMMIGRATION AND CUSTOMS<br>ENFORCEMENT FIELD OFFICE<br>DIRECTOR,<br><br>               Respondent(s). | CASE NO. C25-2720-KKE<br><br>TEMPORARY RESTRAINING ORDER |

Petitioner Amado Armando Valdes-Oviedo is a citizen and national of Cuba who, proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his immigration detention at the Northwest Immigration Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 3. Valdes-Oviedo now requests a temporary restraining order enjoining Respondents from transferring him from NWIPC while his petition is pending. Dkt. No. 9. For the following reasons, and because the motion seeks limited relief solely to maintain the status quo pending the Court's review and adjudication of the underlying petition, the Court will grant the motion.

Valde-Oviedo first entered the United States as a refugee in 1980. Dkt. No. 7-1. On March 15, 2006, an immigration judge ordered him removed to Cuba. Dkt. No. 7-4. Valdes-Oviedo was subsequently released on an order of supervised release ("OSUP") months later. Dkt. No. 7-5.

TEMPORARY RESTRAINING ORDER - 1

Nearly two decades after his initial release, on August 15, 2025, Valdes-Oviedo's OSUP was revoked and he was arrested by Immigration and Customs Enforcement ("ICE") and served with a notice of arrest and custody determination. *See* Dkt. Nos. 7-8, 7-9. Respondents claim that his OSUP was revoked because ICE determined "there is now a significant likelihood that Petitioner can be removed from the United States in the foreseeable future." Dkt. No. 6. On his notice of custody determination form, Valdes-Oviedo marked a box that states "I **do** request an immigration judge review of this custody determination." Dkt. No. 7-9 (emphasis in original). About four months later, ICE served Valdes-Oviedo with a notification indicating that it intended to remove him to a third-country—i.e., a country other than Cuba, which was listed on his removal order. Dtk. No. 7-10. In particular, the notice indicated that ICE intended to remove Valdes-Oviedo to Mexico. *Id.*

Valdes-Oviedo claims that his detention is unlawful on several grounds, including that (a) his removal is not "reasonably foreseeable" and that he is being indefinitely detained in violation of the Immigration and Nationality Act, *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), and (b) that his re-detention violated due process because he was not afforded notice and an opportunity to be heard with respect to the reasons ICE had for revoking his OSUP. *See* Dkt. No. 3. Respondents argue, among other things, that, although Valdes-Oviedo has been detained longer than the presumptively reasonable six-month period under *Zadvydas*, he has not presented evidence refuting that his removal to Mexico is reasonably foreseeable. Dkt. No. 6 at 7–9. They also claim that Valdes-Oviedo cannot obtain habeas relief because he has not exhausted his administrative remedies. *Id.* at 10. In particular, Respondents argue that Valdes-Oviedo does not allege "he has sought a bond hearing, or been denied bond, or that any bond hearing he had was deficient." *Id.*

TEMPORARY RESTRAINING ORDER - 2

The Court may grant a TRO to preserve the Court's jurisdiction and to maintain the status quo. *See A.A.R.P. v. Trump*, 605 U.S. 91, 97 (2025) (Federal courts have "the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve [] jurisdiction over the matter."). The Court finds that Valdes-Oviedo has presented serious issues going to the merits of his claims, that he is likely to suffer irreparable harm if he is transferred from NWIPC before his petition is resolved, and that the balance of equities and public interest weigh in favor of granting temporary relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

To begin, while Respondents contend Valdes-Oviedo's removal is reasonably foreseeable, the record does not support that contention. Indeed, the declaration of Deportation Officer Enrique Rodriguez that Respondents submitted simply asserts that "Mexico has been accepting Cuban citizens, and ICE believes there is a significant likelihood of removal in the reasonably foreseeable future that Petitioner will be accepted." Dkt. No. 8 ¶ 14. To the extent the subsequent text in Rodriguez's declaration provides individualized reasons why Valdes-Oviedo is likely to be removed to Mexico in the foreseeable future, the text is redacted, and respondents have not filed an unredacted version. *Id.*

Moreover, Respondents assert that Valdes-Oviedo has not pursued administrative remedies. But they fail to address that he indicated on his notice of custody determination form that he was requesting review by an immigration judge. *See* Dkt. No. 7-9. Apparently, no such review was provided.

Finally, Respondents concede in a footnote that they do not know if Valdes-Oviedo was given an interview, as required by the applicable regulations, in which he could have presented evidence to refute the reasons for his re-detention—i.e., the reasonable foreseeability of his removal. *See* Dkt. No. 6 at 7 n.2; 8 C.F.R. § 241.13(i)(3). It is also unclear whether Valdes-Oviedo was ever asked if he was afraid of being removed to Mexico, notified of his right to apply

TEMPORARY RESTRAINING ORDER - 3

for fear-based protections, or provided an interview in which he could have articulated a reasonable fear of removal to Mexico. *See Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *5–6 (W.D. Wash. Nov. 17, 2025).

Valdes-Oviedo has also shown that transfer from NWIPC would cause irreparable harm. His motion indicates that transfer would disrupt his ongoing treatment for diabetes, hypertension, and cardiac issues, as well as his family and community ties in Washington, where he has multiple U.S. citizen family members currently residing. Dkt. No. 9 at 2–3.

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the Government is a party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020) (citation omitted). These factors also favor Valdes-Oviedo because "there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009).

Accordingly, the Court orders as follows:

(1) Valdes-Ovidea's motion for a TRO, Dkt. No. 9, is GRANTED.

(2) Respondents ARE PROHIBITED from removing Petitioner from the United States or this jurisdiction—i.e., the Western District of Washington—without further order of this Court.

(3) This Order expires February 12, 2026, unless extended by this Court.

Dated this 29th day of January, 2026.

Kymberly K. Evanson
United States District Judge

TEMPORARY RESTRAINING ORDER - 4